Filed 7/2/15  P. v. Hagee CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID JAMES HAGEE,<br><br>        Defendant and Appellant. | H039966<br>(Santa Cruz County<br>Super. Ct. No. F24266) |

Defendant David James Hagee stole food from a grocery store and threatened to kill a security guard, requiring the security guard to use pepper spray to subdue him.  On appeal from his conviction for making criminal threats (Pen. Code, § 422, subd. (a))[1] and petty theft (§ 484, subd. (a)), defendant claims there was insufficient evidence of sustained fear to support the criminal threats conviction and that flaws in the jury instructions prejudiced the proceedings such that he is entitled to a new trial.  For the reasons stated here, we will affirm.

## I.    TRIAL COURT PROCEEDINGS

The following is based on testimony from defendant's trial.  Beginning in January 2013, Joseph Pernyeszi worked as a security guard for First Alarm Security Company, a private contract security company.  He patrolled the parking lots and storefront walkways at a shopping center in Santa Cruz, consisting of a Safeway and other stores.  Pernyeszi met defendant between late January and early February 2013 during an incident where

---

[1]  Unspecified statutory references are to the Penal Code.

defendant walked onto the shopping center property, gave Pernyeszi a nasty look, and urinated on a building. When Pernyeszi approached defendant and told him to stop, defendant started walking toward him with a puffed up chest and clenched fists. Defendant reportedly told Pernyeszi " 'I'm going to fucking kill you,' " and " 'I'm going to beat the shit out of you.' " Defendant smelled like alcohol and had slurred speech. Pernyeszi took out his pepper spray, told defendant to stop moving toward him, and eventually convinced defendant to leave the property. Police responded and told defendant not to return.

Defendant returned to the property the next day, apologized to Pernyeszi, and seemed sober and friendly. Pernyeszi interacted with defendant four or five times in January and February 2013. During one interaction, Pernyeszi and a Safeway employee confronted defendant about taking food without paying and defendant gave the food back to the Safeway employee. Defendant made derogatory comments but no threats on that occasion.

Laura Moslander, a Safeway employee, testified that on February 20, 2013 she was working at Safeway's deli counter around 3:50 p.m. and saw an individual later identified as defendant take a container of food and leave the store without paying. Another Safeway employee ran after defendant. Moslander yelled at defendant but did not pursue him. A surveillance camera inside Safeway captured the incident, which was admitted into evidence and played for the jury.

Pernyeszi testified that two female Safeway employees ran out of the store on February 20 and told him that defendant had taken food without paying. Pernyeszi saw defendant walk around the side of the Safeway building onto an adjacent property, where defendant sat down and started eating the food. Pernyeszi called his dispatcher to request police assistance. While waiting for the police, Pernyeszi continued to watch defendant but remained on the shopping center property. Based on the way defendant stumbled as he walked, Pernyeszi thought defendant was drunk. After five or ten minutes, defendant

2

looked directly at Pernyeszi, who then asked him "Dave, what did you do?" Defendant started walking directly toward Pernyeszi with clenched fists and reportedly told him " 'I'm going to fucking kill you' " and " 'I'm going to beat the shit out of you.' " Pernyeszi readied his pepper spray and repeatedly admonished defendant to stop walking toward him. When defendant got within an arm's length of Pernyeszi, he sprayed defendant in the face to subdue him.

Defendant immediately fell to the ground. Pernyeszi called 911, the recording of which was admitted into evidence and played for the jury.[2] Pernyeszi told the 911 dispatcher that he had to pepper spray a subject for stealing from the grocery store and that the defendant was intoxicated and "violent." Pernyeszi said defendant was subdued but that "you should really get someone down here" because "it's going to wear off, so we need someone here now." After the 911 call, Pernyeszi handcuffed defendant and stayed with him until paramedics arrived five or ten minutes later.

Reflecting on his mental state during the incident, Pernyeszi testified that he was not initially fearful when defendant approached him because he had been able to peacefully resolve previous interactions with defendant. However, when defendant disregarded Pernyeszi's warnings and got too close, Pernyeszi took defendant's threats seriously. Pernyeszi said he feared for his life once defendant was within arm's length of him. He estimated that the entire interaction between defendant starting to approach and the pepper spraying lasted five to ten seconds. After listening to the audio of the 911 call, Pernyeszi described his demeanor as frantic during the call and recalled that he still felt "affected by the adrenaline and the fear and everything" while talking to the 911 operator.

---

[2] A transcript of the call was provided to the jury. Although the jury was admonished that the call itself rather than the transcript was the evidence, we quote from the transcript, the accuracy of which defendant has not questioned.

On cross-examination, Pernyeszi testified that the amount of time he feared for his safety was less than five seconds. However, he also testified that he was "still kind of" fearful even after using the pepper spray because he did not know how long defendant would be subdued. Pernyeszi stated that he remained on high alert even after handcuffing defendant because he feared defendant might try to attack him (though defendant ultimately did not) and that he "didn't truly feel safe" until the paramedics arrived. Responding to defense counsel, Pernyeszi acknowledged that he was concerned about civil liability from the incident and stated that concern about the effects of pepper spray on defendant's eyes informed his decision to request emergency help.

As the paramedics washed the pepper spray out of defendant's eyes, police officers arrived including Officer Alex Teaford. Teaford testified that Pernyeszi was upset as he started talking to him and that Pernyeszi's hands had "slight tremors to them." Officer Teaford also interviewed defendant, who was angry and seemed "a little bit intoxicated." Defendant spoke in a loud voice with a tensed neck. Defendant admitted stealing the food and yelled at Teaford to take him to jail. Though Teaford remembered defendant swearing and yelling, he did not recall hearing defendant threaten anyone. That testimony conflicted with Pernyeszi's recollection, who testified that while he was giving a statement to Teaford defendant might have said "something to the effect of, oh, 'I'm really going to fucking kill you now.' "

Defendant was held to answer and was charged by information with making criminal threats as a felony (§ 422, subd. (a)) and petty theft (§ 484, subd. (a)). The information also alleged a prior prison term (§ 667.5, subd. (b)), and ineligibility for a county jail sentence due to a prior serious or violent felony conviction (§ 1170, subd. (h)(3)).

At defendant's jury trial, Moslander, Pernyeszi, and Teaford testified for the prosecution consistent with the foregoing summary. Defendant did not call any witnesses and did not testify. Before closing arguments, the court provided several jury

4

instructions, a few of which are relevant to this appeal. Over defense objection the court provided an instruction on the lesser included offense of attempted criminal threats. The court instructed the jurors that if "all of you decide unanimously that the defendant is not guilty of Count 1, you then go on to ... the lesser included offense." The court explained that one element of attempted criminal threats was that "the defendant, acting with requisite intent to threaten, makes threats that are received and understood by the victim; however, the victim is not placed in fear, even though the victim reasonably could have been." The court also provided CALCRIM No. 226 regarding witness credibility, instructing the jurors that "[y]ou alone must judge the credibility or believability of the witnesses," and providing factors to help in that determination. Regarding oral statements attributed to defendant, the court provided CALCRIM No. 358, admonishing the jurors to consider "with caution any statement made by the defendant tending to show his guilt unless the statement is written or otherwise recorded."

Defense counsel's closing argument focused on attacking Pernyeszi's credibility based on inconsistencies between his testimony and other evidence. Though Pernyeszi testified that two female Safeway employees came outside to report defendant, counsel pointed out that Moslander stated that only one employee went outside and the surveillance video showed only one employee pursuing defendant. Another criticism of Pernyeszi's testimony involved defendant's conduct in front of Officer Teaford, with Pernyeszi stating that defendant might have threatened him in Teaford's presence and the officer stating that he did not recall hearing defendant threaten anyone. Defense counsel then asked the jurors to consider: "Is the story that [Pernyeszi] told you true?" Defense counsel argued that Pernyeszi was motivated by his fear of civil liability to report that defendant had threatened him even if those threats did not actually occur. While counsel acknowledged that Pernyeszi testified he was still fearful even after handcuffing defendant, defense counsel challenged the reasonableness and existence of any fear continuing after defendant was pepper sprayed. Finally, defense counsel quoted

5

CALCRIM No. 358 and told the jurors "[y]ou have to consider whether that applies here." In rebuttal the prosecutor pointed out that the surveillance video did not show the outside of the store and ended after the first employee pursued defendant out the door, meaning that it did not preclude the possibility that a second employee went outside to speak with Pernyeszi.

Before sending the jury to deliberate, the court provided additions to the jury instructions that it had discussed with counsel outside the presence of the jury. Over defense counsel's objection the court granted the prosecutor's request to add the following to CALCRIM No. 358: "When a defendant's statement is an element of the crime, as it is in criminal threats, this instruction may not apply." The court also added CALCRIM No. 3517 regarding the order of deliberations, including the following: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime." The jury retired to deliberate in the mid-afternoon and returned guilty verdicts on both charged offenses the same day.

Defendant waived jury trial on the prior prison term allegation, which was found true after a court trial. In July 2013 the court sentenced defendant to a total of three years in state prison, consisting of the middle term of two years for making criminal threats plus one year for the section 667.5, subdivision (b) prison prior. The court also sentenced defendant to 180 days for petty theft, concurrent with the prison sentence.

## II. DISCUSSION

### A. EVIDENCE OF SUSTAINED FEAR

Defendant argues there was insufficient evidence to support his conviction for making criminal threats because the prosecution did not prove that Pernyeszi felt sustained fear and, even if Pernyeszi actually experienced sustained fear, that fear was objectively unreasonable. "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses

6

evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).) To overturn a conviction, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Section 422, subdivision (a) provides, in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally ..., is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." Thus, to convict defendant the prosecution had to show not only that Pernyeszi subjectively experienced sustained fear but also that the fear was objectively reasonable. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.)

### 1. Pernyeszi Subjectively Experienced Sustained Fear

Section 422 does not define the phrase "sustained fear for his or her own safety," but judicial interpretations generally agree it requires a period of fear "that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

As defendant argues that Pernyeszi's fear was insufficiently sustained, it is useful to break the pepper spraying incident into three time periods and analyze the evidence of fear during each period. The first period began when Pernyeszi learned defendant had taken food without paying, continued for the five to ten minutes he observed defendant, and ended when defendant began walking toward Pernyeszi. The second period includes

7

the five to ten seconds during which defendant made statements while approaching Pernyeszi and ended when Pernyeszi used his pepper spray. The third period began once defendant fell to the ground, continued through the 911 call and handcuffing, and ended five to ten minutes later when the paramedics arrived.

Pernyeszi testified he did not fear for his safety during the first period because he assumed "this event was going to unfold the same as the first," with defendant heeding his warning to stop. For the second period, defendant acknowledges Pernyeszi's testimony that he feared for his life but contends that the duration of that fear was inadequate as a matter of law to satisfy the requirement that the fear be sustained. (§ 422, subd. (a).) Regarding the third period, defendant claims Pernyeszi's "fear evaporated as it was immediately evident that the pepper-spray had diffused the threat by disabling" defendant.

Contrary to defendant's claim, there was substantial evidence from which a jury could find that Pernyeszi's fear continued through the third period. Pernyeszi testified that he felt "affected by the adrenaline and the fear and everything" during the 911 call and that he sounded frantic. Though defendant points to Pernyeszi's testimony that he "only really feared for [his] safety and reacted somewhere under five seconds," Pernyeszi also testified that he was "still kind of" fearful even after spraying defendant, that he remained "on high alert" after handcuffing defendant, and that he did not "truly feel safe until the paramedics got there and there were more people at [his] side." Defendant contends that Pernyeszi's motivation to call 911 was concern for defendant's physical condition rather than fear that defendant was still dangerous. However, while concern for defendant provided some motivation, the transcript of the 911 call provides evidence from which a jury could find that Pernyeszi also feared for his personal safety. Pernyeszi told the 911 dispatcher that defendant was "intoxicated and violent" and expressed his concern that the pepper spray is "going to wear off, so we need someone here now." Reviewed in the light most favorable to the judgment, the foregoing provides sufficient

8

substantial evidence that Pernyeszi experienced sustained fear for his safety throughout the second and third periods of the incident, extending for five or ten minutes.

Defendant suggests that the trial court did not believe that Pernyeszi's fear lasted after he pepper sprayed defendant, pointing to the trial court's statement that there was a dispute about "how long he was in fear" and that the timeframe lasted only "seconds." However that statement, made outside the presence of the jury, is irrelevant to whether sufficient evidence supported the jury's verdict. The court merely noted that the facts were sufficiently in dispute to warrant an instruction on the lesser included offense of attempt.

The analysis in *People v. Fierro* (2010) 180 Cal.App.4th 1342 (*Fierro*) supports the jury's findings here. After a parking dispute at a gas station, Fierro lifted his shirt to display what the victims believed was a gun (but was actually a knife). Fierro displayed the weapon for roughly a minute while insulting the victims and threatening to kill them. After Fierro told the victims to leave, they drove off and called the police within 15 minutes. The victims told the 911 operator they were " 'scared shitless' " from Fierro's threats. (*Id.* at pp. 1345-1347.)

On appeal from Fierro's conviction for making criminal threats, he argued that for purposes of the sustained fear element of section 422 the court should focus on the 40-60 seconds during which Fierro actually displayed the weapon and should not consider the 15 minutes that elapsed between driving away and calling the police. (*Fierro, supra,* 180 Cal.App.4th at pp. 1348-1349.) Rejecting that argument, the court reasoned it "ignores human nature." (*Id.* at p. 1349.) The court explained that the jury reasonably could have found that "a person who hears someone say, 'I will kill you ... right now,' coupled with seeing a weapon, is quite justified in remaining" afraid for 15 minutes. (*Ibid.*)

Defendant's argument here is similar to the one rejected in *Fierro*. His claim that Pernyeszi's fear evaporated immediately after pepper spraying defendant ignores human nature and is contradicted by the testimony summarized above. Pernyeszi could

reasonably have remained fearful until the paramedics arrived based on defendant's threats and demeanor. Further, unlike the victims in *Fierro* who were able to drive away after Fierro displayed a weapon and threatened them, Pernyeszi waited in relatively close proximity to defendant throughout the entire incident.

Finally, defendant argues that Pernyeszi's willingness to remain physically close to defendant by helping him sit against a tree showed his fear had dissipated. But Pernyeszi's testimony about his physical proximity after pepper spraying defendant is ambiguous. On the 911 call Pernyeszi said (apparently to defendant): "Sit up, man. Sit up and lean against the tree." On cross-examination Pernyeszi testified: "I had a hard time getting him against the tree. Even when the paramedics were also trying to sit him against the tree, and he seemed to try to [lie] on the ground." Viewing the evidence in the light most favorable to the judgment (*Bolin, supra,* 18 Cal.4th at p. 331), the jury could have reasonably concluded that Pernyeszi was merely verbally instructing him to move.

### 2. Pernyeszi's Sustained Fear Was Objectively Reasonable

Defendant argues that Pernyeszi's fear during the third period of the incident after defendant was pepper sprayed and handcuffed was objectively unreasonable. Pernyeszi agreed with defense counsel's statement that it "looked like [defendant] was in a lot of pain" after he was pepper sprayed. Defendant argues that no reasonable person would continue to fear for his or her personal safety when confronted with a person who was handcuffed and in pain from being pepper sprayed. However, a rational trier of fact could conclude that a reasonable person under the circumstances Pernyeszi faced (no back up, one month of experience at the job, no history of using pepper spray for protection) would remain fearful until additional help arrived. Sufficient evidence therefore supported the jury's implicit finding that Pernyeszi's fear was objectively reasonable.

10

## B. JURY INSTRUCTION ON ATTEMPTED CRIMINAL THREATS

In addition to instructing regarding the elements of criminal threats, the trial court provided the elements of the lesser included offense of attempted criminal threats. Regarding the objective reasonableness of an attempted threat, the court instructed as follows: "the defendant, acting with requisite intent to threaten, made threats that are received and understood by the victim; however, the victim is not placed in fear, even though the victim reasonably could have been." Defendant argues that the trial court's instruction was incomplete because it omits the necessary qualification that the fear in the subjective and objective elements of the crime must be *sustained*.

After the parties filed their Opening and Respondent's Briefs, the California Supreme Court decided *People v. Chandler* (2014) 60 Cal.4th 508. The *Chandler* court held that to "avoid substantial First Amendment concerns associated with criminalizing speech, we construe the offense of attempted criminal threat to require proof that the defendant had a subjective intent to threaten *and* that the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*Id.* at p. 525, original italics.)

Although the trial court here correctly included both subjective and objective elements in its attempt instruction, the instruction did not specify that the fear must be sustained. Based on the court's omission of the word "sustained," the jury could have rejected attempt liability based on evidence that Pernyeszi experienced at least *some* fear. We therefore find the court erred by providing an incomplete instruction regarding a lesser included offense and we must determine whether that error was prejudicial.

In *People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*), the California Supreme Court decided that providing an incomplete instruction regarding a lesser included offense in a noncapital case is "not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id.* at p. 165, citing Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818,

836 (*Watson*).) Breverman was tried for murder after he fatally shot someone who was vandalizing his property. The trial court properly instructed the jury regarding murder as well as the lesser included offense of unreasonable self-defense voluntary manslaughter but did not instruct the jury regarding heat of passion voluntary manslaughter. (*Breverman,* at p. 148.)

The *Breverman* court found that trial courts must instruct, sua sponte, regarding "all theories of a lesser included offense which find substantial support in the evidence." (*Breverman, supra,* 19 Cal.4th at p. 162.) When a court omits a lesser included offense instruction in its entirety, that error is reviewed under *Watson* because "the United States Supreme Court has expressly refrained from recognizing a federal constitutional right to instructions on lesser included offenses in noncapital cases." (*Id.* at p. 165.) *Watson* also applies where the trial court provides an *incomplete* instruction regarding a lesser included offense. (*Id.* at pp. 178-179.) The *Breverman* court reasoned that because the defendant was convicted of murder based on complete and proper instructions, his federal constitutional right to have the jury find each element of the charged offense beyond a reasonable doubt was satisfied and the incomplete lesser included offense instruction was state law error. (*Ibid.*)

Like Breverman, defendant was convicted of the charged greater offense and does not challenge the adequacy of the instructions for that offense. His federal constitutional rights were thus satisfied and we review the lesser included offense instruction under *Watson*. An error regarding lesser included offense instructions is more likely to be harmful when the jury is given an " 'all or nothing' choice between conviction of the crime charged or complete acquittal ... ." (*People v. Barton* (1995) 12 Cal.4th 186, 196.) Instructional errors related to lesser included offenses are generally harmless "when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1086 (*Koontz*); but see *People v. Ngo* (2014) 225 Cal.App.4th 126, 160-

161 [finding *Watson* prejudice when court gave sexual penetration and simple battery instructions but omitted attempted sexual penetration instruction entirely].)

Applying those principles here, the court did not completely omit an instruction regarding the lesser included offense, meaning that the jury was not faced with an all-or-nothing choice between convicting defendant or acquitting him entirely. And by convicting defendant of the greater offense of making criminal threats, the jury necessarily found that Pernyeszi experienced sustained fear. As the factual issue omitted from the attempt instruction was decided adversely to defendant (*Koontz, supra,* 27 Cal.4th at p. 1086), he has not shown a reasonable probability of a more favorable outcome had the trial court given a complete instruction regarding attempted criminal threats.

### C. JURY INSTRUCTION ON THE ORDER OF DELIBERATION

Defendant argues the trial court's instruction that the jurors should "go on to" deliberate regarding the lesser included offense of attempted criminal threats only if they first unanimously find defendant not guilty of the charged offense violated the rule of *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*). In *Kurtzman*, the California Supreme Court stated that while "the jury may not *return a verdict* on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged," the jury should not be prohibited "from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense." (*Id.* at p. 329, original italics.) Defendant also argues his federal constitutional rights were violated because the jury did not have the opportunity to freely consider the lesser included offense during their deliberations. (Citing *U.S. v. Jackson* (9th Cir. 1984) 726 F.2d 1466, 1470 [finding reversible error where "instruction given by the court did not allow the jury to consider the lesser offense unless the jury first unanimously acquitted defendant of the greater offense"].)

13

In the course of instructing the jury before the parties' closing arguments, the court introduced the concept of a lesser included offense with the following: "If all of you decide unanimously that the defendant is not guilty of Count 1, you then go on to include the lesser included offense. If all of you decide unanimously that the defendant is guilty of Count 1, you do not go on to commit [*sic*] the lesser. You can't be guilty of both the lesser and the greater. For example, you can be guilty of one or the other or not guilty of one or the other or both." That language was not included in the written instructions that were provided to the jury. After the parties' closing arguments, the court read additional instructions to the jurors, including CALCRIM No. 3517, which provides in relevant part: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime." The jurors received a written copy of CALCRIM No. 3517. To the extent the court's initial statement erroneously suggested to jurors that they could not deliberate regarding the lesser included offense before deciding whether defendant was guilty of the charged offense, harm was prevented when the court clarified-both orally and by written instruction-the jurors' freedom to decide the order of their deliberations. (See *Kurtzman, supra,* 46 Cal.3d at p. 335 [applying *Watson* standard].)

**D. INSTRUCTIONS REGARDING DEFENDANT'S STATEMENTS**

Before closing arguments, the trial court read CALCRIM No. 358, instructing jurors to consider "with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded." After the parties' arguments, at the prosecutor's request the court added the following to CALCRIM No. 358: "When a defendant's statement is an element of the crime, as in criminal threats, this instruction may not apply." Defendant argues the trial court erred in providing that additional instruction.

14

After the parties' briefing on appeal, the California Supreme Court decided *People v. Diaz* (2015) 60 Cal.4th 1176 (*Diaz*), where it found that although the trial court has no sua sponte duty to provide CALCRIM No. 358, if that instruction is requested it applies to all of a defendant's statements, "regardless of whether the statement constitutes all or part of the criminal act and whether it is admitted for its truth." (*Diaz*, at p. 1184.) The *Diaz* court confirmed that failing to provide the cautionary instruction is reviewed "for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given." (*Id.* at p. 1195.) *Diaz* instructs reviewing courts to examine whether there was conflicting evidence " 'about the exact words used, their meaning, or whether the [statements] were repeated accurately.' " (*Ibid.*, quoting *People v. Pensinger* (1991) 52 Cal.3d 1210, 1268.) In finding the error harmless in *Diaz*, the court noted that the trial court had provided CALCRIM No. 226 (regarding witness credibility), reasoning that when " 'the trial court otherwise has thoroughly instructed the jury on assessing the credibility of witnesses, we have concluded the jury was adequately warned to view their testimony with caution.' " (*Diaz,* at p. 1196, quoting *People v. McKinnon* (2011) 52 Cal.4th 610, 680 (*McKinnon*).)

According to *Diaz*, CALCRIM No. 358 applies to all of a defendant's statements and the trial court therefore erred in instructing the jury it might not apply. Defendant argues the error was prejudicial because it relieved the prosecution of its burden to prove beyond a reasonable doubt that defendant made the threatening statements. The *Diaz* court rejected that argument, noting that the "cautionary instruction does not conflict with the reasonable doubt instruction because the two instructions serve distinct purposes and aid the jury in different ways." (*Diaz, supra,* 60 Cal.4th at p. 1188.) The cautionary instruction simply advises the jury that particular caution should be taken when deciding whether to believe a witness's testimony about a defendant's statements. The *Diaz* court concluded that the "language of the cautionary instruction does not reference the People's burden of proof or the elements of the offense, or in any other way suggest to jurors that

15

the instruction was meant to create an exception to the rule that all elements of the crime must be proved beyond a reasonable doubt." (*Ibid.*)

Defendant also argues that there is a reasonable probability the jury would have reached a more favorable result if given a proper instruction. Defendant argues that inconsistencies in Pernyeszi's testimony suggested he might not be telling the truth and notes that the timing of the incorrect instruction (occurring after the parties' closing arguments and immediately before the jury began deliberations) gave it undue prominence in the jury's deliberations. (Citing *Bollenbach v. U.S.* (1946) 326 U.S. 607, 611-612 ["Particularly in a criminal trial, the judge's last word is apt to be the decisive word."].) Defendant also compares his case to *People v. Ford* (1964) 60 Cal.2d 772, (*Ford*), where the Supreme Court found the failure to give a cautionary instruction like the one presently in CALCRIM No. 358 was prejudicial in Ford's trial for murder and other crimes because the prosecution's case was largely based on testimony by "hostile witnesses whose testimony showed a number of obvious conflicts and apparent inconsistencies." (*Ford*, at p. 799-800.)[3]

On this record, defendant has not shown a reasonable probability of a more favorable result without the erroneous addition. The trial court properly instructed the jurors through CALCRIM No. 226 that "[y]ou alone[] must judge the credibility or believability of the witnesses" and provided relevant factors to consider in making credibility determinations. The trial court's addition to CALCRIM No. 358 also did not forbid jurors from considering with caution statements attributed to defendant, but rather told them the instruction "may not apply" when defendant's statement is an element of the crime. Defense counsel paraphrased CALCRIM No. 226 during closing argument, informing jurors that "if you believe that a witness has lied to you, you should consider

_____

[3] *Ford* was overruled in part on other grounds by *People v. Satchell* (1971) 6 Cal.3d 28, 35-36. *Satchell*, in turn, was overruled by *People v. Flood* (1998) 18 Cal.4th 470, 484-490.

whether or not you should disregard that witness's entire testimony." Defense counsel attacked Pernyeszi's credibility by pointing to statements he made about the number of employees who reported the incident to him and whether defendant made additional threats in the presence of the police. But no evidence challenged defendant's " 'exact words used, their meaning, or whether the [threatening statements] were repeated accurately.' " (*Diaz, supra,* 60 Cal.4th at p. 1195.) Without direct evidence calling into question the accuracy of the statements attributed to defendant, the trial court's error related to CALCRIM No. 358 was harmless. (See *McKinnon, supra,* 52 Cal.4th at p. 680 ["This court has held to be harmless the erroneous omission of the cautionary language when, in the absence of such conflict, a defendant simply denies that he made the statements."].)

## III.    DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.